**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**DANVILLE DIVISION**

| | |
|---|---|
| MICHAEL CORRADI, ) | |
|     Plaintiff. ) | |
| v. ) | Civil No.: 4:22-cv-011 |
| ) | |
| BRADLEY J. KOLLS, M.D., *et al.*, ) | By: Michael F. Urbanski |
|     Defendant. ) | Chief United States |
| ) | District Judge |

## MEMORANDUM OPINION

In this diversity medical malpractice case, plaintiff Michael Corradi ("Corradi") seeks to recover from defendants Bradley J. Kolls, M.D. ("Dr. Kolls"), Private Diagnostic Clinic, PLLC ("PDC"), and Duke University Health System, Inc. ("Duke Health") as a result of stroke treatment he received from defendants at the SOVAH Health Hospital in Martinsville, Virginia ("SOVAH Health Martinsville"). This matter is before the court on defendants' motion to dismiss for lack of jurisdiction and for failure to state a claim, or alternatively to transfer venue. Mot. to Dismiss, ECF No. 16. The issues were fully briefed and the court heard argument on July 19, 2022. Because Corradi has sufficiently alleged a plausible claim against Dr. Kolls based on his treatment of Corradi at SOVAH Health Martinsville and against PDC and Duke Health based on allegations of actual agency, defendants' motion to dismiss is **DENIED**. As the claim arose in the Western District of Virginia and some witnesses are located here, plaintiff's choice of forum will not be disturbed. As such, defendants' motion to transfer venue is **DENIED**.

1

I.  **Procedural and Factual History.**

Corradi's amended complaint against Dr. Kolls, PDC, and Duke Health alleges medical malpractice arising from the stroke treatment he received from defendants at SOVAH Health Martinsville. Am. Compl., ECF No. 13. Corradi is a citizen of Pennsylvania who received healthcare from the defendants while he was physically located at the SOVAH Health Virginia Hospital in Martinsville, Virginia. Id. at 2.

Dr. Kolls is a citizen of North Carolina and licensed to practice medicine in Virginia by the Virginia Board of Medicine. Id. at 2. Corradi alleges that Dr. Kolls was an employee or agent of Duke Health and PDC. Duke Health is a North Carolina non-profit corporation with its principal office in Durham, North Carolina. Id. at 3. PDC is a North Carolina professional limited liability company with its principal office in Durham, North Carolina.[1] Id. at 2.

In October 2019, Corradi arrived at SOVAH Health Martinsville's emergency department exhibiting stroke symptoms including sudden numbness in his arm, leg, and mouth and displaying slurred speech. Id. at 11. Upon admission to SOVAH Health Martinsville, stroke protocol was initiated and a CT scan was ordered along with a Telestroke examination. Id. at 12. To administer the Telestroke exam, the attending emergency physician contacted Dr. Kolls at Duke University Hospital in North Carolina. Id. at 13. Dr. Kolls was contacted because he was a part of the Duke Telestroke Network Telemedicine Consulting Program ("the Duke Telestroke Program") that allows smaller regional hospitals like SOVAH

---

[1] In a supplement to their notice of removal, defendants aver that none of PDC's members are citizens of Pennsylvania. Notice, ECF No. 34. As such, removal of this case from the City of Martinsville Circuit Court is proper and subject matter jurisdiction established by means of the complete diversity of the parties.

Health Martinsville to obtain opinions from stroke specialists affiliated with Duke University Hospital. Defs.' Mem., ECF No. 17 at 1-2.

While physically located in North Carolina, Dr. Kolls examined and treated Corradi by means of videoconference and the use of a mobile robot.[2] Following his examination of Corradi, Dr. Kolls drafted a consultation note. Defs.' Mem., ECF No. 17 at 11-14. Corradi's attending physicians at Sovah, Drs. Brant Hinchman and Michael Innis, monitored and cared for Corradi according to Dr. Kolls' consultation recommendations.

Corradi subsequently suffered a stroke which he claims would have been prevented by proper treatment. Corradi alleges that Dr. Kolls breached his duty of care while examining, assessing, and recommending treatment for Corradi specifically by failing to respond to Corradi's complaints, signs, and symptoms. Corradi also claims Dr. Kolls did not consider the medical risks to which Corradi was particularly susceptible, did not carry out proper medical procedures, and failed him in a number of other ways. Am. Compl., ECF No. 13 at 16-17. Lastly, Corradi asserts that Duke Health and PDC are both vicariously liable for Dr. Kolls' acts and omissions because they were his employers. Id. at 17.

## II. Legal Standards.

### a. Personal Jurisdiction.

When a court considers "a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." Universal Leather, LLC v. Koro AR, S.A.,

---

[2] The Duke Telestroke Program mobile robot located at SOVAH Health Martinsville is aptly named "Lightning McBot." Am. Compl., ECF No. 13, at 10.

3

773 F.3d 553, 558 (4th Cir. 2014) (citing Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 276 (4th Cir. 2009)). In determining if a plaintiff has met this burden, a court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Id. (quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). However, a court "need not 'credit conclusory allegations'" in determining whether a plaintiff has met his burden of making a prima facie showing of personal jurisdiction. Sonoco Prods. Co. v. ACE INA Ins., 877 F. Supp. 2d 398, 407 (D.S.C. 2012) (citing Masselli & Lane, PC v. Miller & Schuh, PA, No. 99-2440, 2000 WL 691100, at *1 (4th Cir. May 30, 2000)). In a case where defendants have a relationship with one another, the court must evaluate the individual acts of each defendant when determining whether personal jurisdiction exists. Rush v. Savchuk, 444 U.S. 320, 322-24 (1980).

Before exercising personal jurisdiction over a non-resident defendant, a court must find that two conditions are satisfied. First, the state's long-arm statute must authorize exercise of jurisdiction in the circumstances presented. Second, the exercise of jurisdiction must comport with Fourteenth Amendment due process standards. Ellicott Mach. Corp., Inc. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). The Fourth Circuit has interpreted Virginia's long-arm statute, Virginia Code § 8.01 – 328.1, as being coextensive with the Due Process Clause. English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990) (citing Peanut Corp. of Am. v. Hollywood Brands, Inc., 696 F.2d 311, 313 (4th Cir. 1982)). Because Virginia's long-arm statute extends personal jurisdiction to the outer bounds of due process, the two-prong test collapses into a single inquiry when assessing personal jurisdiction in Virginia.

> Fairness is the touchstone of the jurisdictional inquiry, and the 'minimum contacts' test is premised on the concept that a corporation that enjoys the privilege of conducting business within a state bears the reciprocal obligation of answering to legal proceedings there. In the context of specific jurisdiction, the relevant conduct must have only such a connection with the forum state that it is fair for the defendant to defend itself in that state. We do more than formulaically count contacts, instead taking into account the qualitative nature of each of the defendant's connections to the forum state. In that vein, a single act by a defendant can be sufficient to satisfy the necessary quality and nature of such minimal contacts, although casual or isolated contacts are insufficient to trigger an obligation to litigate in the forum.

Tire Eng'g v. Shandon Linglong Rubber Co., 682 F.3d 292, 301 (4th Cir. 2012) (internal quotations and citations omitted).

The question, then, is whether defendant has sufficient "minimum contacts with [Virginia] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)); Edwards v. Schwartz, 378 F. Supp. 3d 468, 488 (4th Cir. 2018). The "minimum contacts" test requires that defendants purposefully avail themselves of the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). This test aims to ensure defendants are not "hauled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts," id., and affords defendants protection "from having to defend [themselves] in a forum where [they] should not have anticipated being sued[,]" Consulting Eng'rs, 561 F.3d at 277 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

"[P]hysical presence in the forum is not a prerequisite to jurisdiction[.] [P]hysical entry into the state, either by the defendant in person or through an agent, goods, mail, or some

5

other means, is a relevant contact." Walden v. Fiore, 571 U.S. 277 (2014). The defendant's conduct must form the necessary connection with the forum state such that it is the basis for its jurisdiction over it. Burger King Corp. v. Rudzewicz, 471 U.S. 462, (1985).

### b. Failure to State a Claim.

Defendants assert that if the court finds they are subject to personal jurisdiction, dismissal is appropriate because Corradi's amended complaint fails to state a claim upon which relief can be granted. A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." Id. at 679 (internal citation omitted); see also Simmons v. United Mortg. & Loan Inv., 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (internal quotations and emphasis omitted).

A court must consider all well-pleaded allegations in a complaint as true, see Albright v. Oliver, 510 U.S. 266, 268 (1994), and must construe factual allegations in the light most favorable to the plaintiff. See Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005). Nevertheless, a court is not required "to accept as true a legal conclusion couched as a factual

6

allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986), conclusory allegations devoid of any reference to actual events, see United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation omitted). "Thus, '[i]n reviewing a motion to dismiss an action pursuant to Rule 12(b)(6), [a court] must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level.'" Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009), and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and 'the documents attached or incorporated into the complaint.'" Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 606 (4th Cir. 2015) (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011)). However, the court may consider documents outside of the complaint if they are "integral to the [c]omplaint" and there is no dispute regarding their authenticity. Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). A document is "integral to the [c]omplaint" where the complaint "relies heavily upon its terms and effect . . . ." Id. (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

### c. Transfer of Venue.

Venue in a civil action is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" or "in a judicial district

in which a substantial part of the events or omissions giving rise to the claim occurred….." 28 U.S.C. § 1391(b). In determining whether events or omissions are sufficiently substantial to support venue, the court "review[s] the entire sequence of events underlying the claim." Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004).

If the venue in which the plaintiff filed the civil action is proper, the district court retains the authority to transfer the action to another district or division where it may have been brought for reasons such as "the convenience of parties and witnesses, [or] in the interest of justice." See 28 U.S.C.A. § 1404(a). The district court retains this authority to transfer venue to "prevent the waste of time, energy and money and to protect litigants, witnesses and public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964).

If the claims could have been brought in the requested transferee forum, the Fourth Circuit "considers four factors in determining whether transfer of venue is appropriate: (1) the weight given to the plaintiff's choice of venue, (2) convenience of the parties, (3) convenience of the witnesses, and (4) the interest of justice." Emerson Creek Pottery, Inc. v. Emerson Creek Events, Inc., No. 6:20-CV-54, 2020 WL 7407469, at *3 (W.D. Va. Dec. 17, 2020) (citing Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 444 (4th Cir. 2015)). Defendants have the burden "to disturb the plaintiff's choice of forum by showing that the balance of equities is in their favor and that judicial economy and convenience to all parties favor suit in another forum." Glamorgan Coal Corp. v. Ratners Grp. PLC, 854 F. Supp. 436, 437–38 (W.D. Va. 1993).

### III. Analysis.

#### a. The amended complaint sufficiently alleges personal jurisdiction and a plausible claim against Dr. Kolls.

Corradi sufficiently makes a prima facie showing of personal jurisdiction over Dr. Kolls under Virginia's long arm statute, Va. Code § 8.01-328.1(a)(1) through (4), consistent with the minimum contacts necessary to satisfy due process.

Virginia Code Sections § 8.01-328.1(a)(1)-(a)(4) specify that

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's: (1) Transacting any business in this Commonwealth; (2) Contracting to supply services or things in this Commonwealth; (3) Causing tortious injury by an act or omission in this Commonwealth; (4) Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth[.]

Va. Code Ann. § 8.01-328.1.

Va. Code § 8.01-328.1(B) states: "Using a computer or computer network located in the Commonwealth shall constitute an act in the Commonwealth." A "[c]omputer network" refers to two or more computers connected by a network. Va. Code § 18.2-152.2. "Telemedicine services," discussed in Virginia Code § 38.2-3418.16 pertaining to insurance, is defined by the Virginia legislature as follows:

> "Telemedicine services" as it pertains to the delivery of health care services, means the use of electronic technology or media, including interactive audio or video, for the purpose of diagnosing or treating a patient, providing remote patient monitoring services, or consulting with other health care providers regarding a patient's diagnosis or treatment, regardless of the originating site and whether the patient is accompanied by

9

> a health care provider at the time such services are provided. "Telemedicine services" does not include an audio-only telephone, electronic mail message, facsimile transmission, or online questionnaire. Nothing in this section shall preclude coverage for a service that is not a telemedicine service, including services delivered through real-time audio-only telephone.

Va. Code Ann. § 38.2-3418.16. This code section defines the "originating site" of telemedicine services as "the location where the patient is located at the time the services are provided by a health care provider through telemedicine services." Id.

Under these sections of the Virginia Code, Corradi's pleadings sufficiently establish that Dr. Kolls is subject to personal jurisdiction in Virginia. Corradi's pleadings detail that Dr. Kolls' examination of and interaction with Corradi involved the use of a mobile robot located in Martinsville, Virginia, and a computer network linking Dr. Kolls to the SOVAH Health Martinsville emergency department. Although he was physically present at his office in North Carolina, Dr. Kolls examined Corradi and consulted with his Virginia physicians by means of the mobile robot and the Duke Telestroke Program. The pleadings specify that the Duke Telestroke Program works with Virginia hospitals by "sharing costs of computer and computer network equipment and providing ready access to its specialists." Am. Compl., ECF No. 13 at 5. Pursuant to §8.01-328.1(B), Dr. Kolls' active use of the mobile robot to examine and interact with Corradi in the SOVAH Health Martinsville emergency department sufficiently alleges personal jurisdiction under §8.01-328.1(a)(3), causing a tortious injury by act or omission in the state. Virginia's definition of "telemedicine services" in §38.2-3418.16 further supports a finding of personal jurisdiction over Dr. Kolls because his alleged tortious actions are considered to have occurred in Virginia since Corradi was located here.

10

Moreover, the pleadings assert personal jurisdiction over Dr. Kolls under §8.01-328(a)(1) and (a)(2), because Dr. Kolls' participation in the Duke Telestroke Program with SOVAH Health Martinsville would constitute transacting business in Virginia and contracting to supply services in Virginia. In the alternative, even if Dr. Kolls' actions are considered to be in North Carolina, Corradi sufficiently alleges that he caused tortious injury in Virginia and regularly engaged in business or a persistent course of conduct in Virginia. Va. Code § 8.01-328.1(a)(4). The amended complaint alleges that Dr. Kolls has used the Duke Telestroke Program to conduct telemedicine consultations in Virginia since 2016. Despite Dr. Kolls' assertion that he engaged in the Duke Telestroke Program telemedicine consultations infrequently, only "about three to five weeks a year," this frequency repeated over a six-year period combined with his Virginia licensure and hospital privileges at participating Virginia hospitals in the Duke Telestroke Network sufficiently alleges that Dr. Kolls is subject to personal jurisdiction under Virginia's long-arm statute and meets the minimum contacts test.

Dr. Kolls' actions in examining and treating Corradi by means of the mobile robot and Duke Telestroke Program are easily distinguished from the facts at issue in the cases he cites in support of his personal jurisdiction argument. While Dr. Kolls' citation correctly asserts that incidental communications in the form of telephone calls, emails, and letters do not necessarily form the basis for personal jurisdiction, see, e.g., Village Lane Rentals, LLC v. Cap. Fin. Grp., 159 F. Supp. 2d 910, 915 (W.D. Va. 2001)(sporadic phone calls involving a single transaction and initiated by the plaintiff did not merit imposition of jurisdiction), Dr. Kolls' treatment of patients in Virginia, including Corradi, is far more significant and frequent. Under the unique facts of this case, Dr. Kolls' interaction with and examination of patients located in Virginia

11

hospitals cannot be considered incidental. Corradi alleges that Dr. Kolls interacted with patients just as he would in person through the use of a mobile robot in the examining room to actively engage, question, and evaluate the patient while consulting with the physically present health care provider. Am. Compl., ECF No. 13, at 5-11. In this regard, Dr. Kolls' argument that he merely took a consultative telephone call from an emergency room doctor in Virginia fundamentally understates the allegations of the amended complaint.

In sum, Corradi sufficiently alleges personal jurisdiction under Virginia Code §8.01-328.1(a) and the code sections defining "telemedicine services" and "computer network." Furthermore, personal jurisdiction is constitutionally satisfied because Dr. Kolls could anticipate being subject to suit in the Virginia because of his treatment, albeit by means of advanced technology, of patients located in Virginia.

### b. The amended complaint sufficiently alleges a claim against and personal jurisdiction over PDC and Duke Health based on Corradi's allegation of actual agency.

"Actual agency is a consensual relationship." Murphy v. Holiday Inns, Inc., 216 Va. 490, 492, 219 S.E.2d 874, 876 (1975). The Virginia Supreme Court has "defined the term 'agency' as 'a fiduciary relationship resulting from one person's manifestation of consent to another person that the other shall act on his behalf and subject to his control, and the other person's manifestation of consent so to act.'" Acordia of Va. Ins. Agency, Inc. v. Genito Glenn, L.P., 263 Va. 377, 384, 560 S.E.2d 246, 249 (2002); see also Ashland Facility Operations, LLC v. NLRB, 701 F.3d 983, 990 (4th Cir.2012).

Corradi's amended complaint plausibly alleges the existence of an actual agency relationship between Dr. Kolls, Duke Health, and PDC. An agency relationship is shown by

12

four factors: "(1) selection and engagement of the servant, (2) payment of compensation, (3) power of dismissal, and (4) power of control." Hadeed v. Medic-24, Ltd., 237 Va. 277, 287, 377 S.E.2d 589, 594 (1989). While the first three factors can signal the existence of an agency relationship, the fourth factor, power of control, is essential. Id. Virginia courts look at the extent that the purported principal controls the methods and details of an agent's work to determine agency. Sky Cable, LLC v. Coley, No. 5:11CV00048, 2013 WL 3517337, at *27 (W.D. Va. July 11, 2013); United States v. Rapoca Energy Co., 613 F. Supp. 1161, 1163 (W.D. Va. 1985). "While the power of control is an important factor to consider in determining whether an agency relationship exists, '[a]gency may be inferred from the conduct of the parties and from the surrounding facts and circumstances.'" Acordia, 263 Va. at 384, 560 S.E.2d at 249. To determine whether a doctor is an agent of a hospital, factors considered are whether the doctor (1) held a title at the hospital, (2) had an employment contract at the hospital, (3) had to comply with the hospital's licensing rules and policies, (4) needed the hospital's permission to render services to other entities, and (5) was paid salary by the hospital. See McDonald v. Hampton Training Sch. for Nurses, 254 Va. 79, 81, 486 S.E.2d 299, 301 (1997).

Corradi's amended complaint, ECF No. 13, specifies that Dr. Kolls was an employee and member of the Private Diagnostic Clinic ("PDC") while concurrently an employee of Duke Health at the time of Corradi's treatment. PDC is described on the Duke Health website as the "physician practice of Duke Health." Am. Compl., ECF No. 13 at 2 (quoting Private Diagnostic Clinic, About Us webpage, https://pdc.dukehealth.org/about-us).

13

The amended complaint alleges that Dr. Kolls portrayed himself as both Duke Health and PDC's agent and supports this allegation with information from Dr. Kolls' various online webpages. Id. Dr. Kolls' Duke Health webpage classifies him as a Duke Health Provider who sees patients at the Duke Raleigh Hospital, Duke Regional Hospital, and Duke University Hospital. Id. at 3 (referencing Duke Health, Bradley J. Kolls, MD, PhD, MMCi webpage, https://www.dukehealth.org/find-doctors-physicians/bradley-j-kolls-md-phd-mmci). This webpage also describes him as a "part of Duke's physician network, which comprises doctors and providers at primary and specialty clinics throughout North Carolina and Virginia." Am. Compl., ECF No. 13 at 3 (quote found on the online webpage by clicking the blue circle's "?" next to "Duke Health Provider). The webpage also identifies Dr. Kolls' involvement in the Duke Telestroke Network. Id. at 3.

Additionally, Dr. Kolls' LinkedIn profile, presumably self-authored, specifies that he is employed by Duke University Health System and does not mention involvement with PDC. Id. at 14; see also Brad Kolls LinkedIn page, https://www.linkedin.com/in/brad-kolls-25899214a. This specific information in the amended complaint plausibly supports the allegation that Dr. Kolls performed his treatment of Corradi as the actual agent of both Duke Health and PDC. Therefore, Corradi satisfies the pleading requirements for stating an actual agency claim under Federal Rule of Civil Procedure 12(b)(6).

Despite these plausible allegations of actual agency between Dr. Kolls, Duke Health and PDC, defendants make the red herring argument that medical malpractice claims are not actionable in Virginia under the so-called "captain of the ship" doctrine. Citing Peck v. Tegteyer, 834 F. Supp. 903, 907 (W.D. Va. 1992), and Constine v. Correct Care Solutions,

14

LLC, No. 2:19cv53, 2109 WL 2775491 (E.D. Va. July 2, 2019), defendants argue that the Virginia Medical Malpractice Act, Va. Code § 8.01-581.1, "contains no provision for vicarious liability, and the breadth of the statutory scheme suggest that none is intended." Peck, 834 F. Supp. at 907. But these cases do not stand for the proposition that vicarious liability based on agency or master-servant principles are inapplicable to medical malpractice cases in Virginia. In footnote three, the Peck court recognized that "traditional vicarious liability principles still apply so that, for example, a hospital might be held liable for the negligence of its employees under a master-servant theory." This conclusion is amply supported by Virginia precedent. See Morvillo v. Shenandoah Mem'l Hosp., No. CIV. A. 5:07CV00046, 2008 WL 4179264, at *9 (W.D. Va. Sept. 10, 2008)("… courts applying Virginia law, have applied common law principles of vicarious liability, based upon an agency or master-servant relationship, in cases involving medical malpractice."); Malpica v. Kincaid, No. 1:21-CV-417, 2022 WL 503966, at n. 7 (E.D. Va. Feb. 18, 2022) (citing to Virginia Supreme Court decisions which rebutted the presumption in Costine from Peck and explained that respondeat superior liability could apply to medical malpractice claims in Virginia).

Additionally, at this stage, the court need not reach the question of apparent agency. Apparent agency, sometimes called ostensible agency or agency by estoppel, "means an agency created by operation of law and established by a principal's actions that would reasonably lead a third person to conclude that an agency exists," regardless of whether the principal and agent intended to establish an agency relationship. Sanchez v. Medicorp Health Sys., 270 Va. 299, 304, 618 S.E.2d 331, 333 (2005) (internal citation omitted). "Apparent or ostensible agency is sometimes described as an exception to the general principle that an employer is not

15

vicariously liable for the negligence of an independent contractor." Id., 270 Va. at 305, 618 S.E.2d at 334. Defendants correctly point out that the Virginia Supreme Court has not "previously imposed vicarious liability on an employer for the negligence of an independent contractor on the basis of apparent or ostensible agency, or agency by estoppel." Id., 270 Va. at 307-08, 618 S.E.2d at 335. In Sanchez, the Virginia Supreme Court was faced with the question "whether the theory of apparent or ostensible agency applies to a hospital, thereby making the hospital vicariously liable for the alleged negligence of an emergency room physician who was an independent contractor." 270 Va. at 301, 618 S.E.2d at 332. The Sanchez court declined to extend tort liability under an apparent agency theory in this context, distinguishing jurisdictions which had done so as follows:

> In virtually all these cases imposing vicarious liability, the particular jurisdictions involved had already adopted the theory of apparent agency or agency by estoppel as a basis of tort liability when the jurisdiction used the theory to hold a hospital vicariously liable for negligent medical care rendered by an emergency room physician working as an independent contractor.

270 Va. at 308, 618 S.E.2d at 335. Because the court finds that Corradi has sufficiently alleged actual agency, it need not address the apparent agency issue at the pleading stage.

Personal jurisdiction over corporations may be based on contacts made by their authorized agents. Noble Sec., Inc. v. MIZ Eng'g, Ltd., 611 F. Supp. 2d 513, 534 (E.D. Va. 2009). Inasmuch as Corradi has plausibly alleged an actual agency relationship between Dr. Kolls, Duke Health, and PDC, Corradi has sufficiently alleged personal jurisdiction over those entities based on Dr. Kolls' treatment of Corradi on their behalf. Whether these allegations are borne out by the facts of this case following discovery is yet to be determined

### c. Transfer of venue to North Carolina is not warranted.

Defendants have not met their burden of showing that the balance of equities or judicial economy and convenience favors transfer of this suit to the Middle District of North Carolina, Durham Division. The factors outlined in Emerson Creek Pottery support keeping this action in the Western District of Virginia.

Although Corradi does not live in Virginia, he should not be penalized for his choice of venue. Corradi brought this action in state court in Virginia as his cause of action arose from his treatment by Dr. Kolls at SOVAH Health Martinsville. Corradi never entered North Carolina or availed himself of the protections that North Carolina law offers. In contrast, the amended complaint alleges that Dr. Kolls was licensed to practice medicine in Virginia and "maintained hospital privileges at the Virginia hospitals where he treats or treated patients via telemedicine." Am. Compl., ECF No. 13, at 2. In addition, guidance from the Virginia Board of Medicine indicates that the "practice of telemedicine occurs where the patient is located at the time telemedicine services are used." See Va. Board. Med. Guidance Document 85-12, rev. Oct. 28, 2018 (available at https://www.dhp.virginia.gov/medicine/guidelines/85-12.pdf).

Additionally, convenience to witnesses supports keeping the action in Virginia. A number of the witnesses to the alleged injury are staff at SOVAH Health Martinsville, rendering a trial in the Middle District of North Carolina's Durham courthouse less convenient to those witnesses.

Lastly, defendants' argument that the interests of justice support transfer to the Middle District of North Carolina because the case has not been pending long and proceedings are in their earliest stages does not overcome Corradi's argument that the interests of justice weigh

in his favor because the defendants chose to enter the Western District of Virginia to treat him and therefore should be held accountable by a jury of the district's constituents. See Defs.' Mem., ECF No. 17 at 24, citing Emerson Creek, 2020 WL 7407469, at *5; Pl.'s Mem, ECF No. 21 at 20. Because the factors regarding transfer of venue do not weigh in defendants' favor, the court will not transfer venue.

### IV.     Conclusion.

For these reasons, the court concludes that defendants Bradley Kolls', Duke University Health System's, and Private Diagnostic Clinic, PLLC's motion to dismiss for lack of jurisdiction and for failure to state a claim, or alternatively to transfer venue, ECF No. 16, is **DENIED**.

An appropriate Order will be entered.

Enter: This 31st day of August, 2022

Digitally signed by Michael F. Urbanski     Chief U.S. District Judge
Date: 2022.08.31 13:20:57 -04'00'

Michael F. Urbanski
Chief United States District Judge